Shinn vs. Taylor et al.

———o———

SHINN vs. TAYLOR et al.

JUDGMENT LIENS: *When not available as against lien of vendee.*
   Where title bond is given for the conveyance of lands upon the payment of the purchase money, the lien of the vendee upon the lands for title, after payment of the purchase money, will prevail against the lien of a judgment creditor, attaching subsequent to the agreement to convey.

APPEAL from *Madison* Circuit Court.
Hon. G. C. CRUMP, Sp. J.
*Rose & Green,* for appellant.

FARRELLY, Sp. J.   This was an action, under the Code, for the recovery of certain real property, in the complaint described, brought by the appellant against the appellees, in the Washington circuit court, and afterward transferred to, and tried in the Madison circuit court.

The appellees answered, admitting that they held possession of the lands, but denied property in the appellant, or that he was entitled to the possession thereof.

A trial was had and a verdict and judgment for the appellees; appellant moved for a new trial; the court overruled the motion; he excepted and tendered his bill of exceptions, setting out the evidence, the instructions asked by the appellant and refused, the instructions asked by the appellees and given, and the instructions given by the court on its own motion, and appealed.

The facts adduced at the trial, on the part of the appellant, as appears from certain deeds and depositions read in evidence, without objection on the part of the appellees, are substantially as follows: Charles W. Dean purchased the lands in question from one Samuel R. Bell in 1856 ; Dean sold the lands in 1857, to one Jacob Battenfeld for a valuable consideration, the sum of six hundred dollars, and gave title bond conditioned to make a good and sufficient title when the last instalment of the purchase money should be paid. Battenfeld fully paid off the last of the purchase money in 1862, at which time Dean was leaving the country and went off neglecting to make a deed. Battenfeld subsequently went to the state of Ohio, taking with him the title bond, and while there, in June, 1864, sold the property in question to Shinn, the appellant, for the sum of seven hundred dollars, which was fully paid off in July, 1866, and the title bond of Dean to Battenfeld transferred in writting to the appellant in order that he might receive a deed direct from Dean. The purchase by appellant was made in good faith for a valuable consideration, without any knowledge on his part, or on the part of Battenfeld, of any claim or incumbrance upon the property. Battenfield and appellant were not in communication with Dean at the time of this transaction. When Dean returned home, appellant informed him of his purchase from Battenfield, and requested him to make a deed direct to appellant, which Dean, by letter, readily agreed to do at any time, saying that Battenfeld had fully paid him the purchase money ; but through neglect of appellant's attorney, or other cause, the making of the deed was neglected or delayed until the 18th of June, 1867. Battenfeld, who is the father-in-law of the appellant, went into possession of the property under his purchase from Dean, and held possession until sometime after the commencement of the rebellion, when he went to the state of

Ohio.   In 1865, or early in 1866, Battenfield wrote to one La Fayette Gregg, directing him to take charge of the property and rent it, and afterward wrote that appellant was the owner ; appellant also wrote to Gregg in regard to the property. Gregg, as agent, rented the property as directed, until sometime in the fall of 1867 or 1868.   While acting as agent, he received the title bond given by Dean to Battenfeld, with an assignment on the bond to appellant, with directions to take a deed from Dean to appellant.   In 1867 or 1868, C. M. Duke, who was holding the property under the agent of the appellant, refused to continue paying the rent as he had been doing, and claimed to have possession under J. L. Duke (his son) who claimed to have bought the property at a sheriff's sale, sold upon execution as the property of C. W. Dean.   The agent of the appellant ousted C. M. Duke, the tenant, by legal process, but J. L. Duke refused to give possession, and the appellees afterward came into possession, and by their tenant, Marr, held actual possession of the premises, at and before the commencement of this suit.   Demand for the possession of the premises was made, in writing, upon each of the appellees by the agent of the appellant before suit commenced.   The property in question was sold under two executions, one against Dean and the other against Battenfeld ; the sale was made, under the former, in August, 1867, at which J. L. Duke became the purchaser, and under the latter, sometime after that, and at which one Wesley Barnes became the purchaser. The agent of the appellant, acting in his capacity as such, appeared at both sales and forbid the selling of the property and notified the parties purchasing, and others present, that the property belonged to appellant and stated aloud at the sales, respectively, that Dean and Battenfeld, against whom the executions under which the property was to be sold, had no title or claim to the property.   This was all the evidence introduced on the part of the appellant.

The appellees introduced and read to the jury deeds to the property in question, of the following purport: Sheriff's deed, of date February, 1868, to Wesley Barnes, as purchaser at a sale had under an execution issued December 12, 1867, on a judgment obtained against Battenfeld and others, on the 13th of August, 1866. Sheriff's deed, of date August, 1867, to J. L. Duke, as purchaser at a sale had under an execution issued April —, 1867, on a judgment obtained against Gibson & Dean on the 15th of February, 1867. Deed of J. L. Duke to Wesley Barnes, of date February, 1868. Deed of Barnes and wife to Jennings and Taylor, appellees, of date 12th of January, 1869.

The above is substantially all the evidence introduced by the parties at the trial.

Several instructions were asked by the respective parties, but we deem it necessary only to notice, as principally relied upon, and as materially affecting the rights of the parties under the case presented, the first two instructions asked by the appellant and refused, and the first two asked by the appellees and given by the court over the objection of the appellant, and those given by the court on its own motion.

The appellant asked the court to declare the law as follows:

1st. "That if the jury believe from the evidence that Dean owned the land in controversy and that before the judgment was obtained against him, upon which the execution and sale to Duke was had, he, Dean, had sold the land and received pay therefor and that Duke was notified that Dean had no title, or that he had sold the property and had been paid for it at or before his bidding for the property at the sheriff's sale and before the property was bid off by him, that he, Duke, acquired no title by his bidding or purchase at such sale.

2d. "That if the jury believe from the evidence that Battenfeld had a legal or equitable title to the property and that

before the judgment was obtained against him upon which an execution and sale was had to Barnes, he, Battenfeld, had sold all his interest in that property to the plaintiff and that before the property was bid off by Barnes, he was notified that such sale and payment had been made, or that Battenfeld had no title to the property, he, Barnes, acquired no title by his purchase at such sheriff's sale.

The court refused to give these instructions, to which decision the appellant excepted.

At the instance of the appellees, the court gave the following:

1st. "That if the jury find from the evidence that C. W. Dean had the legal title to the land in question at the rendition of the judgment against him in February, 1867, that such legal title was bound by the judgment, and the plaintiff in the judgment had a right to sell the land on this execution on said judgment, and the purchaser under such execution sale acquired the legal title of Dean at the time of the rendition of such judgment.

2d. "That if the jury find from the evidence that Jacob Battenfeld had an interest in the land in question at the time of the rendition of the judgment against him, in August, 1866, that the plaintiff in such judgment sold such interest on execution on such judgment, the purchaser under such sale acquired all the equitable and legal interest of Battenfeld at the date of such judgment."

And the court, on its own motion, gave two instructions to the jury differing from those asked by the appellant and refused, only in this, that instead of instructing the jury as asked in the instructions of the appellant, to wit: that Duke or Barnes acquired no title by purchase at the sheriff's sales, the court instructed the jury that Duke or Barnes could only acquire such title as Dean or Battenfeld had at or after the

rendition of the respective judgments and before the issuing of the executions.

The appellant excepted to all the instructions given, and he here insists that the court erred in refusing those asked by him, and giving in lieu thereof those asked by the appellees and those given on its own motion, and as a consequence, the verdict of the jury and judgment of the court are contrary to the law and the evidence.

The question presented by the whole record is very similar to that in the case of *Byers et al. v. Engles*, 16 Ark., 543, except that the parties here occupy an attitude the reverse of those in that case. The appellant here seeks to recover, claiming title from the defendants in execution by purchase and full payment and title bond executed prior to the rendition of the judgments and full deed executed prior to the execution sales under which the vendor of the appellees claimed title as purchaser at a judicial sale.

It seems to be well settled law, that a conveyance of real estate, prior to the rendition of the judgment is good and valid as against a purchaser of such real estate at a judicial sale under the judgment, actual notice of the conveyance being given to the purchaser and creditor, and this, though the conveyance be not produced at the sale; that notice may be given at the time of the sale, and that possession from the rendition of the judgment up to the day of sale is sufficient to put both the creditor and the purchaser upon enquiry. *Byers et al v. Engles*, 16 Ark., 543, and cases there cited. That where a title bond is given for the conveyance of lands upon payment of the purchase money, and the purchase money has been paid, the lands are not subject to sale under an execution at law, at the suit of a judgment creditor obtaining judgment subsequent to the execution of the title bond and payment of the purchase money; that the lien of the vendee upon the

land for title, after payment of the purchase money, will pre vail against the lien of a judgment creditor attaching subsequent to the agreement to convey, and that the lien of a judgment creditor only operates on the interest of the judgment debtor at the date of its rendition. See *Money v. Dorsey et al.*, 7 S. & M., 22; *Taylor v. Eckford*, 11 id., 21; *Wiley v. Hightower*, 6 id., 345.

From a review of the facts in the case it appears that on the 13th of August, 1866, when the judgment was rendered against Battenfeld, and under which Barnes, the vendor of the appellees purchased the property, Battenfeld had as early as 1864 sold the property to the appellant for a valuable consideration and had, prior to the rendition of the judgment, been fully paid therefor, and had transferred Dean's title bond to the appellant, and that, prior to the sale at which Barnes purchased, Dean had made a full deed to appellant, and that Barnes and all others at the execution sale at which he purchased were notified that Battenfeld neither had nor claimed any title to the property; that, on the 15th of February, 1867, when the judgment was rendered against Dean, and under which J. L. Duke purchased the property, Dean had, as early as 1857, sold the property to Battenfeld for a valuable consideration, giving his title bond therefor, and the purchase money had been fully paid off in 1862, prior to the sale of Battenfeld to appellant, and long prior to the rendition of either of the judgments, and that appellant, by his agent, notified Duke and all others at the execution sale, at which he purchased; that Dean neither had nor claimed any title to the property.

That appellant, by his agent, had the control and possession of the property, and leased and received rents therefor, prior to the rendition of the judgments, and up to and after the times at which Barnes and Duke purchased at the respective execution sales; that the appellees acquired possession by C.

34

M. Duke, the tenant of the appellant, denying his landlord's title and refusing to attorn, claiming to hold under J. L. Duke, the purchaser at the execution sale on the judgment against C. W. Dean.

With the law, as above stated, and with these facts before us, not controverted on the trial, or anything to the contrary attempted to be shown, it seems to us that the conclusion can hardly admit of a reasonable doubt that at the time the judgments were rendered against Battenfeld and Dean, and under which the vendor of the appellees purchased, the defendants in the execution neither had nor claimed any interest whatever in the property, and that the appellant has shown such legal title as entitled him to bring his suit in ejectment. Applying the facts and the law then to the instructions as asked by the appellant and refused by the court, we have been unable to discern wherein the instructions were not as broad as the case, thoroughly sustained by the evidence, and well grounded in the law, and being so, should have been given. The instructions as above given at the instance of the appellees, based, as it clearly appears, entirely upon the assumption that a legal or equitable interest in the property existed in Dean or Battenfeld at the time of the rendition of the judgments against them, were wholly unwarranted by the evidence, were necessarily abstract and should not have been given.

As to the instructions given by the court on its own motion, being identical with those asked by the appellant and refused, with the exception of the modification thereof by the court, above pointed out, and which modification, we think, unauthorized by the evidence, and on that account objectionable, though not so much so as to vitiate the instructions or furnish sufficient ground of reversal, had they been the only instructions given in the case, yet, taken in connection with the fact, that the court overruled the instructions

of the appellant, which ought to have been given, as embodying the law applicable to the facts in the case, and gave the instructions asked by the appellees, abstract and wholly unsupported by the evidence, as they were, were well calculated to mislead the jury.

For the errors in the giving and refusing of the instructions as above indicated. the judgment must be reversed and the cause remanded for a new trial.

GREGG, J., being disqualified, did not sit in this case.